```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
RASVINDER DHALIWAL,                                         :
                                                            :
                              Plaintiff,                    :
                                                            :              18-CV-3146 (VSB)
             -against-                                      :
                                                            :              **OPINION & ORDER**
                                                            :
MALLINCKRODT PLC a/k/a MALLINCKRODT                         :
PHARMACEUTICALS, an Irish public limited                    :
company, and MALLINCKRODT ENTERPRISES                       :
LLC,                                                        :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

Appearances:

Rasvinder Dhaliwal
New York, New York
*Pro se Plaintiff*

A. Michael Weber
Devjani H. Mishra
Maria Carceres-Boneau
Daniella Adler
Littler Mendelson, P.C.
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Rasvinder Dhaliwal ("Plaintiff") brings this whistleblower retaliation action against Defendants Mallinckrodt plc ("Mallinckrodt") and Mallinckrodt Enterprises LLC ("MNK" and collectively, "Defendants"), seeking damages and litigation costs for Defendants' retaliation, including retaliatory discharge, pursuant to 15 U.S.C. § 78u-6(h), *et seq* and 31 U.S.C. § 3730(h).  Before me is Defendants' motion to compel arbitration and dismiss the complaint or, in the alternative, to stay proceedings pending arbitration.  Because Plaintiff's

claims are intertwined with a valid arbitration agreement, Defendants' motion to compel arbitration is GRANTED. Because I do not have the discretion to dismiss the complaint, Defendants' motion to dismiss is DENIED, and their motion to stay proceedings pending arbitration is GRANTED.

I.   **Background**[1]

Plaintiff began working for Questcor Pharmaceuticals, Inc. ("Questcor") as an Associate Director, Market Access on August 1, 2014, (Compl. ¶¶ 9, 37),[2] pursuant to an offer letter she received from Questcor's Talent Acquisition Manager ("Offer Letter"), (*see* Andersen Aff. Ex. A).[3] The Offer Letter, which was signed by Plaintiff, stated, "[Y]ou also agree to comply with [Questcor's] rules, policies and current procedures, including those currently set forth in the Employee Handbook . . . . You agree to abide by [Questcor's] policies and procedures, including those set forth in the Employee Handbook." (*Id.*) Plaintiff received a copy of the Questcor Pharmaceuticals, Inc. Employee Handbook ("Employee Handbook" or "Handbook"), (*see* Andersen Aff. Ex. B), shortly after she began her employment, (*id.* ¶ 4), and she electronically acknowledged receipt of the Employee Handbook on August 4, 2014 at 11:13 a.m., (*id.* Ex. C). On August 21, 2014, Plaintiff returned a document to Questcor's human resources department, which was titled New Hire Orientation Checklist ("Orientation Checklist"). (*See id.* Ex. D). The Orientation Checklist, which was signed by Plaintiff, included a checkmark indicating that Plaintiff "[a]cknowledge[d] policies and programs" that included the

---

[1] Although I apply a standard similar to that applied in considering a motion for summary judgment, "when considering whether to apply equitable estoppel, courts properly may rely upon the allegations of a plaintiff's complaint." *Diaz v. Michigan Logistics Inc.*, 167 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010)).

[2] "Compl." refers to the Complaint, Jury Trial Demanded, filed April 10, 2018. (Doc. 1.)

[3] "Andersen Aff." refers to the Affidavit of Monica Andersen in Support of Defendants' Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, Stay Proceedings, filed June 4, 2018. (Doc. 17.)

2

"Employee Handbook." (*Id.*) Plaintiff asserts that she does not remember having received a copy of the Employee Handbook before she signed the Orientation Checklist. (Pl. Aff. 3.)[4]

The introduction section of the Employee Handbook refers to Questcor's arbitration policy, advising employees that "except for [Questcor's] employment at will policy and Dispute Resolution Process/Arbitration, the policies, procedures and benefits described in this handbook may be changed from time to time." (Employee Handbook 5.) Pages six through eight of the Employee Handbook set forth the terms of the arbitration agreement entered between the employee and Questcor (the "Arbitration Agreement"). (*See id.* at 6–8.) Specifically, the Employee Handbook states that Questcor "uses an alternative dispute resolution process known as binding arbitration to fully and finally resolve all disputes between [an employee] and [Questcor]." (*Id.* at 6.)

The Employee Handbook explains that Questcor's "Dispute Resolution Process through mutual binding arbitration applies to [Questcor] and to all employees of Questcor . . . and covers all disputes or claims between an employee and Questcor, including but not limited to those relating to an employee's employment, compensation or the termination of employment." (*Id.* at 7.) The Handbook emphasizes that "final and binding arbitration will be the sole and exclusive remedy for any claim or dispute you have against Questcor and any of its supervisors, employees, officers, directors . . . and that, by agreeing to use arbitration to resolve such claims or disputes, both Questcor and you agree to forego any right you each may have had to a jury trial on these claims or disputes." (*Id.*) The Handbook makes specific reference to the Employment Arbitration Rules of the American Arbitration Association as the governing rules

---

[4] "Pl. Aff." refers to the Affidavit of Rasvinder Dhaliwal in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, which is attached to her Supplemental Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Dismiss the Complaint, or in the Alternative, Stay Proceedings ("Pl.'s Supp. Opp."), filed March 14, 2019. (Doc. 49-1.)

3

for any arbitration proceeding. (*Id.*) Finally, the Handbook states that "the provisions of this Arbitration Agreement shall survive the termination of your employment and shall remain in full force and effect thereafter." (*Id.* at 8.)

On August 14, 2014, Mallinckrodt acquired Questcor for $5.8 billion, and Questcor became a wholly owned subsidiary of Mallinckrodt. (Compl. ¶¶ 10, 43–44.) After that time, Plaintiff became an employee of Mallinckrodt. (*Id.* ¶ 11.) Beginning on August 28, 2014 and continuing through the end of her employment, Plaintiff "raised concerns with respect to Questcor and Mallinckrodt's questionable business and compliance practices . . . ." (*Id.* ¶ 45.) According to Plaintiff, "on November 21, 2014, pursuant to the Company's Employee Handbook, [Plaintiff] redirected her concerns *via* email to Mallinckrodt's CEO . . . ." (*Id.* ¶ 126.)[5] Eventually, Plaintiff brought these concerns to the attention of officials at the Securities and Exchange Commission and the Department of Justice. (*Id.* ¶¶ 50–54.) Plaintiff was terminated from her position of employment on March 26, 2018. (*Id.* ¶ 55.) Plaintiff alleges that her termination was in retaliation for her whistleblowing activity, in violation of provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 15 U.S.C. § 78u-6(h), *et seq.* and the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). (*Id.* ¶ 3.)

**II.     Procedural History**

Plaintiff filed this action on April 10, 2018. (Doc. 1.) On June 4, 2018, Defendants filed a motion to compel arbitration and dismiss the complaint, (Doc. 14), as well as a memorandum of law, (Doc. 15), and affidavits with exhibits in support of their motion, (Docs. 16–17). On June 28, 2018, Plaintiff filed her opposition to Defendants' motion. (Doc. 36.) On November 12, 2018, Defendants filed their reply. (Doc. 42.) After determining that both parties failed to

---

[5] The Complaint refers to Defendants together as the "Company." (*See id.* ¶ 1.)

4

address the appropriate legal standards in their memoranda, I ordered them to submit supplemental briefing, and I denied Defendants' motion with leave to refile. (Docs. 43, 45.) Defendants filed the instant motion to compel arbitration and dismiss the complaint on February 26, 2019, (Doc. 46), along with a supplemental memorandum in support, (Doc. 47). Plaintiff filed a supplemental memorandum in opposition on March 14, 2019, which attached several documents, including an affidavit. (Doc. 49.) Defendants filed their supplemental reply memorandum on March 26, 2019. (Doc. 50.)

On June 6, 2019, after Plaintiff's counsel filed a motion to withdraw, I entered an order staying the case until August 12, 2019, to give Plaintiff an opportunity to retain new counsel. (Doc. 56.) On August 12, 2019, Plaintiff submitted a letter informing me that she had not yet retained new counsel, and requesting that I extend the stay. (Doc. 61.) In light of the extensive delays already caused by Plaintiff's search for new counsel, and considering the fact that Plaintiff filed an opposition to the motion to compel arbitration with the assistance of counsel, I denied Plaintiff's request and lifted the stay. (Doc. 62.) To date, Plaintiff still has not retained new counsel, and she is therefore proceeding pro se.

In the time since I lifted the stay, the parties have submitted several letters addressing a recently decided case involving the same arbitration agreement. (Docs. 63, 65, 69, 72.)

### III. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that an arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In creating "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within [its] coverage," the FAA was "a

5

congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) ("[O]ur cases place it beyond dispute that the FAA was designed to promote arbitration. They have repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration,' . . . ." (second and third alterations in original) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006))). The "principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted). Notwithstanding the strong policy in favor of arbitration agreements, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)) (additional citations omitted); *see also Concepcion*, 563 U.S. at 339 ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.") (internal citations omitted).

In determining whether claims are subject to arbitration, courts in this Circuit consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128 (citations omitted). If these two conditions are met, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration . . . ." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). When deciding motions to compel, courts apply a standard similar to that applied in considering a motion for summary judgment, necessitating a consideration of "all relevant, admissible evidence submitted

6

by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" and drawing all inferences in favor of the non-moving party. *Nicosia v. Amazon.com Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted)).

IV. **Discussion**

    A. *Motion to Compel Arbitration by a Non-Signatory*

        1. **Applicable Law**

"One of the common law theories recognized by the Second Circuit for allowing a non-signatory to enforce an arbitration agreement is equitable estoppel, pursuant to which the signatory will be estopped from avoiding 'arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the [e]stopped party has signed.'" *Lismore v. Societe Generale Energy Corp.*, No. 11 Civ. 6705(AJN), 2012 WL 3577833, at *6–7 (S.D.N.Y. Aug. 17, 2012) (quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999)); *see* also *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) ("[A] non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." (internal quotation marks omitted)). "Courts in this district have applied a two-part test in determining whether the signatory's claims are intertwined with the underlying contract obligations, analyzing whether (1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) whether there is a close relationship between the signatory and the non-

7

signatory party." *Lismore*, 2012 WL 3577833, at *6–7 (collecting cases) (internal quotation marks omitted).

### 2. Application

The Arbitration Agreement "covers all disputes or claims between an employee and Questcor, including but not limited to those relating to an employee's employment, compensation or the termination of employment." (*See* Employee Handbook 7.) Plaintiff's claims, which arise under the Dodd-Frank Act and the FCA, are based on the termination of her employment, which she alleges was retaliation for her "repeatedly raising concerns about and having objected to Defendants' improper and unlawful conduct concerning securities laws violations." (*See* Compl. ¶ 305; *see also id.* ¶ 319 ("As a result of Ms. Dhaliwal's lawful acts and of the efforts she undertook to stop, correct, or otherwise remedy violations of the FCA and AKS, and Defendants' knowledge thereof, Defendants[] harassed, discriminated against, threatened, and ultimately terminated Ms. Dhaliwal's employment . . . .")

As an initial matter, Plaintiff argues that the Arbitration Agreement could not have been enforced by Questcor, and therefore it cannot be enforced by Defendants. (*See* Pl.'s Supp. Opp. 4–5.) Plaintiff's argument is based on the requirement that "parties actually agree to arbitration" because arbitration "is a matter of consent, not coercion." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (internal quotation marks omitted). Plaintiff states in an affidavit that, although she signed the Orientation Checklist on August 21, 2014, (*see* Andersen Aff. Ex. D), acknowledging Questcor's "policies and programs" including the "Employee Handbook," which included the Arbitration Agreement, "as of that date, to the best of [her] memory, [she] had not received a copy of the Employee Handbook or the Arbitration Clause from Questcor," (Pl. Aff. ¶ 3.) However, Defendants submitted an electronic log, whose truth

8

and accuracy was sworn to by MNK's Vice President of Human Resources, demonstrating that Plaintiff electronically acknowledged receipt of the Employee Handbook on August 4, 2014. (*See* Andersen Aff. Ex. C.) "Plaintiff's failure to remember cannot create an issue of fact" where Defendants have offered clear documentary evidence that Plaintiff acknowledged receipt. *See Cheeseboro v. Little Richie Bus Serv., Inc.*, 254 F. Supp. 3d 485, 492 (E.D.N.Y. 2017), *aff'd,* 722 F. App'x 107 (2d Cir. 2018) (summary order); *see also Petrunti v. Cablevision*, No. 08-CV-2277(JFB)(AKT), 2009 WL 5214495, at *11 (E.D.N.Y. Dec. 30, 2009) (where Defendant put forth testimony that Plaintiff violated company policy on a specific occasion, "Plaintiff's lack of recollection is insufficient . . . to create a triable issue of fact."). Plaintiff offers no evidence, other than her lack of memory, to demonstrate that the electronic log of her acknowledged receipt of the Employee Handbook is false or inaccurate.

Plaintiff's argument that her claims do not arise under the subject matter of the Arbitration Agreement focuses on the fact that the Agreement specifically references Questcor and does not contemplate claims against "Defendants or any other successors, assignees, agents, persons, or entities." (*See* Pl.'s Opp. 5–6.) Plaintiff misconstrues the equitable estoppel theory under which Defendants now assert Plaintiff should be compelled to arbitrate because that theory presupposes that the Agreement does not specifically contemplate arbitration with the non-signatory. Moreover, Plaintiff's claims are clearly based, at least in part, on her employment with Questcor. For example, in the Complaint, Plaintiff alleges that "[o]n May 21, 2015, [she] voluntarily met with various government officials and agents . . . to discuss the business practices of *both Questcor and Mallinckrodt* . . . ." (Compl. ¶ 187 (emphasis added).) Accordingly, I find that Plaintiff's claims arise under the subject matter of the Arbitration Agreement, and that the "subject matter of the [Arbitration Agreement] and the subject matter of this dispute are

9

intertwined." *Lismore*, 2012 WL 3577833, at *7; *see also Ragone v. Atl. Video at Manhattan Ctr.*, No. 07 CIV. 6084 (JGK), 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) (finding that a plaintiff's workplace sexual harassment claims fell under the subject matter of the arbitration agreement where the agreement covered "any and all claims or controversies arising out of the employee's employment").

Under the second prong of the equitable estoppel analysis, "a court asks whether the relationship between the signatory and the non-signatories is sufficiently close to support the conclusion that the signatory had consented to extend its agreement to the non-signatory, or, otherwise put, make it inequitable for the signatory to refuse to arbitrate on the ground that it had made no agreement with the non-signatory." *Reyes v. Gracefully, Inc.*, No. 17-CV-9328 (VEC), 2018 WL 2209486, at *4 (S.D.N.Y. May 11, 2018) (internal quotation marks omitted). This careful review of the relationships between a signatory and a non-signatory to an arbitration agreement is "consistent with the black letter rule that the obligation to arbitrate depends on consent." *See Sokol Holdings* 542 F.3d at 361.

Plaintiff's consent to arbitrate claims with Defendants manifested on more than one occasion. First, as discussed above, Questcor was acquired by Mallinckrodt on August 14, 2014, just two weeks after Plaintiff's employment with Questcor began. (*See* Compl. ¶¶ 9–10; Andersen Aff. ¶ 7.) On August 21, 2014, one week *after* the merger was announced, Plaintiff signed the Orientation Checklist, acknowledging the policies in the Employee Handbook, including the Arbitration Agreement. (Andersen Aff. Ex. D.) Additionally, on November 21, 2014, Plaintiff alleges that "pursuant to the Company's Employee Handbook, [Plaintiff] redirected her concerns via email to Mallinckrodt's CEO . . . ." (Compl. ¶ 126.) Plaintiff's Complaint specifically defines the term "Company" to refer to Defendants, not Questcor. (*See*

Compl. ¶ 1.) This allegation demonstrates Plaintiff's understanding that, after Mallinckrodt acquired Questcor and before the termination of Plaintiff's employment, her employment with Defendants was governed by the policies set forth in the Employee Handbook, including the Arbitration Agreement. *See Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (permitting a non-signatory to compel arbitration where "the parties apparently continued to conduct themselves as subject to [an arbitration agreement] regardless of change in corporate form").

Courts have found sufficiently close relationships where "[t]he undisputed evidence shows that [the non-signatory] was the corporate successor to [the signatory]," and Plaintiff worked in the same position "without interruption during [the] change in ownership structure." *Reyes v. Gracefully, Inc.*, No. 17-CV-9328 (VEC), 2018 WL 2209486, at *5 (S.D.N.Y. May 11, 2018); *see also Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013) (noting that a sufficiently close relationship "has been found where the non-signatory is a parent company, corporate successor, guarantor, or corporate affiliate of a signatory"). Here, Plaintiff does not dispute that Mallinckrodt is the corporate successor to Questcor. (*See* Compl. ¶ 10 (alleging that on "August 14, 2014, Mallinckrodt plc acquired Questcor" and that "[w]ith the acquisition, Questcor became a wholly owned subsidiary of Mallinckrodt"); *id.* ¶¶ 43–44; *see also* Andersen Aff. ¶ 7 ("Questcor was acquired on August 14, 2014 . . . .")). Nor does Plaintiff dispute that she continued to work in the same position after the merger was fully executed. (*See* Compl. ¶¶ 10–13.) Instead, Plaintiff attempts to distinguish *Reyes*, pointing out that Judge Caproni noted that the signatory and non-signatory shared the same owner and business name. *See Reyes* 2018 WL 2209486, at *5. But Plaintiff fails to explain the significance of that

11

distinction, or to identify any language in *Reyes* suggesting that outcome of Judge Caproni's decision turned on the common name and ownership of the two entities.

Therefore, because Plaintiff's claims arise under the subject matter of the Arbitration Agreement, and because of close relationship between Plaintiff and Defendants, I find that Plaintiff's claims are intertwined with the Arbitration Agreement, and that it would be "inequitable for [Plaintiff] to refuse to arbitrate on the ground that [she] had made no agreement with [Defendants]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008). Accordingly, Defendants motion to compel arbitration is granted.

    **B.**  *Motion to Dismiss, or, in the Alternative, to Stay Proceedings Pending Arbitration*

Defendants request that I dismiss the Complaint in its entirety, apparently pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (*See* Def.'s Mem. 10.)[6] However, the Second Circuit has concluded that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015). Accordingly, Defendants' motion to dismiss is denied and this matter is stayed pending the resolution of the arbitration proceedings.

**V.**  **Conclusion**

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED, Defendants' motion to dismiss is DENIED, and Defendants' motion to stay proceedings pending arbitration is GRANTED.

---

[6] Defendants do not identify the specific procedural mechanism pursuant to which they move to dismiss. "Def.'s Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and Dismiss the Complaint or, in the Alternative, Stay Proceedings, filed June 4, 2018. (Doc. 15.)

12

No later than sixty (60) days after the entry of this Opinion & Order, and every sixty (60) days thereafter, the parties shall submit a joint letter providing an update as to the status of the arbitration proceedings.

The Clerk of Court is respectfully directed to terminate the open motion at Document 46 and to stay this matter.

SO ORDERED.

Dated: September 29, 2019
      New York, New York

Vernon S. Broderick
United States District Judge